**Martha WATSON, Appellant,**

v.

**Margaret DREADIN, Appellee.**

**No. 7112.**

District of Columbia Court of Appeals.

Argued Aug. 16, 1973.

Decided Sept. 19, 1973.

Rehearing and Rehearing en Banc Denied Dec. 3, 1973.

Daniel Partridge, III, Arlington, Va., appointed by this court, for appellant.

James N. Dulcan, Assistant Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

PER CURIAM:

In this Uniform Reciprocal Enforcement of Support Act case, a Florida resident (Mrs. Margaret Dreadin, maternal grandmother of Linda Ann Wilson, age 5) petitioned the Circuit Court of Escambia County, Florida, to compel defendant-mother of the child (Mrs. Martha Watson, who was residing in the District of Columbia) to provide support for said child. The complaint recited that the needs of the child amounted to $20 per week. The Florida court transmitted the requisite number of copies of the complaint to the Superior Court of the District of Columbia (responding court). The Superior Court referred the matter to the Corporation Counsel. Mrs. Watson was ordered to appear to show cause why she should not be required to provide the support prayed for in the complaint. In a hearing on this

matter the Superior Court judge ordered Mrs. Watson to provide support in the amount of $10 per week. From this order, Mrs. Watson appeals, raising the following contentions:

I. The undisputed evidence was to the effect that Mrs. Watson lacked the financial ability to support the child, and that clearer findings of fact and conclusions of law were required;

II. The action was not brought by a person having legal custody of the minor;

III. The complaint filed in the Florida court did not adequately comply with § 88.-111 of the Florida Uniform Reciprocal Enforcement of Support Act;

IV. The Florida order awarding custody to Mrs. Dreadin was void (a) for want of notice to the nonresident mother; and (b) because the mother was denied the right of confrontation and cross-examination; and

V. The trial court proceedings were unconstitutional in that the court relied also on the Florida certificate as to the needs of the child in contravention of the last-mentioned rights.

This court cannot agree with appellant. We, therefore, affirm.

I

 The trial judge made adequate written findings of fact to justify his conclusion that Mrs. Watson was financially able to provide $10 per week for the support of the child. Mrs. Watson testified that she incurred over $300 in phone calls to Mrs. Dreadin. There was evidence that she offered to send an airplane ticket to Mrs. Dreadin to be used to transport the child from Florida to Washington, D. C. The trial judge's conclusion is further supported by the finding that this relatively small weekly sum could be earned by caring for children of working mothers. Her employability, at least to this extent, appears from the record.

II

 The law of the initiating jurisdiction determines the requisite status of the petitioning party in a Uniform Reciprocal Enforcement of Support Act case. Cobbe v. Cobbe, D.C.Mun.App., 163 A.2d 333, 335 (1960). The relevant Florida provision, Fla.Stat. § 88.131, F.S.A. (1965), provides that a complaint on behalf of a minor may be brought by a person having legal custody of the minor. Mrs. Dreadin had obtained legal custody under a preliminary order of the Florida court in which it was stated, "The provisions of this preliminary order [are] in full force and effect pending hearing of this Case at the time and date stated in the summons and/or the further order of this Court." Mrs. Watson having produced no further order to the contrary, the question of a valid custody was not for the courts of this jurisdiction.

III

 Section 88.111 of the Florida Uniform Reciprocal Enforcement of Support Act provides:

The complaint shall be verified and shall state the name and, so far as known to the plaintiff, the address and circumstances of the defendant and his dependents for whom support is sought and all other pertinent information. . . .

Mrs. Dreadin's complaint recited that the needs of the child amounted to $20 per week. As the initiating court, the Florida court was only required to make a prima facie showing of appellant's duty to support. The responding court must then determine whether in fact appellant has a duty to support and whether there has been a failure to discharge this duty, and, if so, what amount of support should be required. Having found a breach of duty on the part of Mrs. Watson, the court's support order of $10 per week is clearly reasonable. See Cobbe v. Cobbe, supra.

## IV

■ The preliminary custody order, if challenged, must be challenged in Florida since the District of Columbia court has no jurisdiction over the custody issue in its role of responding court. Blois v. Blois, 138 So.2d 373 (Fla.App.1962), which ruled that a counterclaim for divorce could not be raised by defendant against petitioner in the responding court, stated as follows:

Certainly it is implicit, if not explicit, from . . . provisions of our Uniform Reciprocal Enforcement of Support Law that the only real issue in a proceeding under that law is the duty of support . . .. [Id. at 374.]

The opinion goes on to say:

The Uniform Reciprocal Enforcement of Support Law was intended to provide a simplified two-state procedure by which the obligor's duty to support an obligee residing in another state may be enforced expeditiously and with a minimum of expense to the obligee . . .. [Id. at 375, quoting Thompson v. Thompson, 93 So.2d 90 (Fla.1957).]

The Florida court's reasoning is applicable to the instant case. In addition to the points made in Blois, the widespread declaration that the Act is designed to expedite the obligee's effort and reduce expenses suggests that Mrs. Dreadin should not be required to litigate the custody question in a jurisdiction foreign to her, and in a limited proceeding such as this. See also Clarke v. Blackburn, 151 So.2d 325, 329 (Fla.App.1963), quoting Blois v. Blois, supra; and Davidson v. Davidson, 66 Wash. 2d 780, 405 P.2d 261 (1965).

Since the only issue in the District of Columbia courts is the obligation to support the child and appellant acknowledges the child to be hers without advancing any valid reason why she should not be required to provide support, the purely collateral question of the grandmother's

standing to initiate the proceedings was properly passed over. Although a question of standing may often be a vital issue in some interstate cases, where the narrow question is a duty of child support, we think the standing issue here is too collateral for decision in these proceedings. Phrased differently, while standing is normally the kind of jurisdictional issue which may be raised at any time, such is not true in a child support case. This is so where the papers of the initiating state are prima facie in order, and it is recognized that the Florida court has continuing jurisdiction of the custody issue. It must be remembered that custody is never finally decided in the same way as a money judgment entered without notice to a nonresident defendant. Appellant has access to the Florida court any time she wishes to assert her right to custody or defeat the grandmother's custody.

## V

■ The Uniform Reciprocal Enforcement of Support Act as applied in this case did not violate due process. Mrs. Watson was personally served on July 6, 1972, with notice of the District of Columbia's proceeding and was given an opportunity to be heard in the Superior Court hearing which she attended with appointed counsel. Notice of the initiating proceeding is not constitutionally required. See Whittlesey v. Bellah, 130 Cal.App.2d 182, 278 P.2d 511 (1955); Smith v. Smith, 125 Cal.App.2d 154, 270 P.2d 613 (1954). No District of Columbia court has faced the issue, but many other jurisdictions have considered broad constitutional attacks against this Uniform Act and all have ruled in favor of its validity. See Annot., 42 A.L.R.2d 768, 777–78 (1955), and Later Case Service. We hold that actual notice of the initiating proceeding was not constitutionally required.

Accordingly, the order of the trial court is

Affirmed.