Harry Waldo NICKELSON,
Jr., Plaintiff,

v.

UNITED STATES of America, Defense
Office of Hearings and Appeals, and
Leon J. Schachter, Director of the Defense Office of Hearings and Appeals,
Defendants.

No. 4:03cv51.

United States District Court,
E.D. Virginia,
Newport News Division.

Sept. 26, 2003.

Bryan H. Schempf, Jones, Blechman, Woltz & Kelly, PC, Newport News, VA, Counsel for Plaintiff.

Michael A. Rhine, Assistant U.S. Attorney, Norfolk, VA, Susan K. Rudy, Marcia K. Sowles, U.S. Department of Justice, Washington, DC, Counsel for Defendants.

## *OPINION AND DISMISSAL ORDER*

REBECCA BEACH SMITH, District Judge.

This matter is before the court on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was filed on June 25, 2003, by defendants, the United States of America, Defense Department of Hearings and Appeals ("DOHA"), and Leon J. Schachter, in his official capacity as Director of DOHA ("Director"). For the reasons set forth below, the motion is **GRANTED** pursuant to Rule 12(b)(6).

### I. Factual and Procedural History

Plaintiff Harry Waldo Nickelson, Jr. is a software engineer for a defense contractor in Hampton, Virginia. Since the mid–1970s, he has held a security clearance

from the United States Department of Defense ("Defense"), which he has used to gain employment with a number of defense contractors. As a condition of keeping his present employment, he is required to maintain a valid security clearance.

Security clearances are periodically subject to a renewal process. On August 20, 2002, the renewal of Nickelson's security clearance was denied pursuant to 10 U.S.C. § 986, which prohibits the grant or renewal of a security clearance to any person "who has been convicted in any court of the United States of a crime and sentenced to imprisonment for a term exceeding one year." 10 U.S.C. § 986(a) and (c)(1) (2000). However, under § 986(d), "[i]n a meritorious case, the Secretary of Defense or the Secretary of the military department concerned may authorize an exception to the prohibition." Upon receiving notice that his clearance would not be renewed, Nickelson sought an exception to this prohibition under § 986(d). One of DOHA's responsibilities is to conduct hearings and appeals involving the security clearances of defense contractors. DOHA was therefore responsible for reviewing Nickelson's request for an exception to the statutory prohibition. This litigation arose when the Director of DOHA denied Nickelson's request.

Over the course of five days in March 1973, Nickelson fraudulently signed four checks which had been stolen by his then-girlfriend in the amounts of $30.00, $48.00, $239.00, and $540.75. Nickelson was a college student at the time. In June 1973, he enlisted in the United States Air Force. He first obtained his security clearance while enlisted and has held it continuously since then.

In August 1974, Nickelson was arrested and, in December 1974, he was convicted of four counts of forgery with intent to defraud a bank. He was sentenced to four years in prison—one year for each count of forgery. Nickelson was released from his incarceration in February 1975 after having served ninety days. He returned to the Air Force and in 1977 received an honorable discharge.

Nickelson subsequently married. He raised two children. He returned to school in 1998 to study computer science and was hired by his current employer as a software systems engineer in April 2000, at which time he fully disclosed his past criminal conduct.

Congress enacted 10 U.S.C. § 986 on October 30, 2000. In June 2001, the Deputy Secretary of Defense requested that DOHA and other agencies within Defense establish procedures to implement § 986(d). DOHA established administrative procedures in July 2001. These procedures are set out in DOHA Operating Instruction No. 64 ("O.I. 64").

Under O.I. 64, Nickelson was entitled to a hearing in front of an administrative judge, who is charged with making factual findings and a recommendation that the request either be forwarded on to more senior Defense officials or that the request be denied. Following Nickelson's hearing, the administrative judge found that Nickelson's prior conviction was mitigated by a variety of factors that, under a Defense guideline which pre-existed § 986, could mitigate concerns about prior criminal history. He recommended further consideration of Nickelson's request for an exception.[1]

Under paragraph 3g of O.I. 64, however, following the administrative judge's review, the Director of DOHA has the "sole discretion" to determine whether to for-

---

1. "Decision of Administrative Judge Claude R. Heiny," ISCR Case No. 01–26057 at 7 (Dep't Defense Feb. 26, 2003) (Compl.Ex. "C").

ward requests for further consideration for exception to the Deputy General Counsel ("DGC").[2] Requests forwarded to the DGC are reviewed to determine whether the Secretary of Defense should grant an exception.

On or before March 24, 2003, the Director of DOHA determined not to forward Nickelson's request to the DGC. No reason for this decision is reflected in the record. The Director's decision effectively denied Nickelson's request for an exception because under O.I. 64 there is no avenue available to appeal the Director's determination.

On April 16, 2003, Nickelson filed a complaint in this court raising two claims. He first alleges that DOHA failed to abide by the procedures contained in O.I. 64 when the Director determined not to forward Nickelson's application to the DGC. In addition, Nickelson alleges that the procedures established by paragraph 3g of DOHA Operating Instruction No. 64 are "illegal, null, and void," because they are inconsistent with 10 U.S.C. § 986.

On June 25, 2003, defendants filed this motion to dismiss. The issues have been fully briefed by each party and oral arguments were heard by the court on August 11, 2003. Defendants' motion is now ripe for review.

## II. Standard of Review

A complaint should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6) unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). In reviewing such a motion, the court must accept the complaint's factual allegations as true and view the allegations in the light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

## III. Analysis

■ Given the foregoing facts, it is difficult for the court to understand why the Director chose not to forward Nickelson's request for an exception on to the DGC. The court, however, has no authority to review the merits of or rationale behind the Director's decision.[3] As Nickelson ap-

---

2. Paragraph 3g provides in relevant part:

> In any case in which Administrative Judge ... recommends consideration of a waiver of 10 U.S.C. 986, the Director shall within his sole discretion determine whether or not to forward the case to the Deputy General Counsel (Legal Counsel) for further consideration of a possible waiver of 10 U.S.C. 986 by the Secretary of Defense ....

3. The decision to revoke a security clearance lies inherently within agency discretion and is not subject to judicial review. *Jamil v. Dep't of Def.,* 910 F.2d 1203, 1205–06 (4th Cir. 1990) (citing *Department of Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)). Further, the determination under § 986(d) is an "action committed to agency discretion" under 5 U.S.C. § 701(a)(2). As

such, it not subject to judicial review under the Administrative Procedure Act. *See Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (holding that under the National Security Act, the CIA Director's decision to terminate an employee is unreviewable). The language of § 986(d), providing that the Secretary *may* authorize exceptions in "meritorious cases" grants deference to the Secretary and "foreclos[es] the application of any meaningful judicial standard of review." *Webster,* 486 U.S. at 600, 108 S.Ct. 2047. Application of § 701(a)(2) to bar judicial review of agency action is especially warranted because this case implicates concerns of national security, "an area of executive action in which courts have long been hesitant to intrude." *Lincoln v. Vigil,* 508 U.S. 182, 191, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993).

parently now realizes, the court is limited in this case to evaluating (1) whether DOHA complied with its own procedural rules, and (2) whether the procedures adopted by DOHA exceed limitations contained in the statute. These issues are evaluated in turn.

## A. Compliance with Agency Regulations

Nickelson's complaint alleges that the "refusal by the Director, DOHA, to forward Nickelson's waiver request to the Deputy General Counsel, Department of Defense, is arbitrary, capricious, and an abuse of discretion, given the recommendation of the Administrative Judge."[4] In his memorandum in opposition to the motion to dismiss and during arguments in open court on the motion, Nickelson's attorney clarified this assertion and indicated that Nickelson "simply petitions this Court to require [DOHA] to follow its own substantive guidelines and regulations." (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 2.)

▮▮▮ Though § 986 does not impose any obligation on DOHA to promulgate guidelines, once it does so the court has the authority to require the agency to follow its own rules. *Jamil v. Dep't of Def.*, 910 F.2d 1203, 1208 (4th Cir.1990). Nickelson's complaint fails to state a claim, however, because it does not allege that any rule or regulation has been violated. *See id.* at 1208–09 (granting summary judgment where there was no showing that Defense failed to follow its own procedures in revoking plaintiff's security clearance). The complaint alleges no facts that would indicate DOHA violated or bypassed

any portion of O.I. 64's requirements in the processing of Nickelson's request. Nickelson's only relevant allegation is that paragraph 3g was violated because the Director determined not to forward Nickelson's request on to the DGC despite the administrative judge's factual findings and recommendation that the Director do so. However, nothing contained in paragraph 3g or any other portion of O.I. 64 requires the Director to defer to the administrative judge's findings or recommendation. To the contrary, paragraph 3g leaves the determination of whether to forward the request to the Director's "sole discretion." The fact that the Director did not follow the findings or recommendation of the administrative judge, even if proven, would therefore not state a claim.

## B. Legality of Administrative Procedures Contained in DOHA Operating Instruction No. 64

▮▮▮ Nickelson also alleges that the procedures for reviewing exception requests that DOHA has established in O.I. 64 do not comport with 10 U.S.C. § 986.[5] Under the Administrative Procedure Act ("APA"), the court has jurisdiction to hold unlawful and set aside agency action that is found to be in excess of statutory authority or limitations. 5 U.S.C. §§ 702, 706(2)(C) (2000).[6] Specifically, Nickelson complains that (1) the statute requires criteria to be established to evaluate exception requests, and (2) the statute prohibits the delegation of authority to review and deny exception requests.

▮▮▮ The head of an executive department or a military department has the authority to prescribe regulations for the

4. Pl. Compl. ¶ XXII.

5. *See* Pl. Compl. ¶ XXI.

6. A court also, of course, has jurisdiction to set aside agency action that is contrary to the federal constitution. Nickelson does not allege any constitutional violation in his complaint. Further, Nickelson does not have a property or liberty interest in his security clearance, so he has no constitutional right to procedural due process in connection with its revocation. *See Jamil*, 910 F.2d at 1209.

"distribution and performance of its business." 5 U.S.C. § 301 (2000). Such administrative regulations do not exceed the agency's authority if they are reasonable and do not conflict with the statute the agency is charged with implementing. *Georgia v. United States,* 411 U.S. 526, 536, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973). Title 10 U.S.C. § 986(d) clearly makes the decision to grant or deny an exception request discretionary.[7] The statute does not require DOHA to establish any criteria for the decision whether to forward requests for exception to the DCG. Therefore, an administrative procedure incorporating a discretionary standard of review is not inconsistent with the statute or unreasonable.

▮ Thus, the only issue remaining for this court to decide is whether the delegation of authority to the Director to terminate the exception request process exceeded the authority or limitations imposed by the statute. The second sentence of § 986(d) prohibits the Secretary from delegating the authority to *authorize* an exception to the prohibition.[8] The statute is silent, however, as to whether the authority to review and deny requests for exception can be delegated. Nickelson argues that this silence should be interpreted to prohibit delegation of the authority to review and deny requests for exception. However, neither the statutory scheme nor common sense permits such an interpretation.

▮ When assessing a claim under the APA that administrative procedures are inconsistent with a statute, it is important to focus on the entire statutory scheme. *Georgia,* 411 U.S. at 538, 93 S.Ct. 1702. Title 10 U.S.C. § 986 is written as a per se prohibition against grant or renewal of a security clearance to a person who has been convicted of a felony and sentenced to more than one year of imprisonment. Subsection (d) confers upon the Secretary the ability in a "meritorious case" to abrogate this prohibition, entirely at his discretion. The statutory scheme indicates that such exceptions are not to be issued lightly. The Secretary must assume responsibility for all instances in which an exception is issued. 10 U.S.C. § 986(d). Further, the statute requires that the Secretary provide Congress with a detailed annual report of all exceptions *issued.* 10 U.S.C. § 986(e).[9] Congress has not asked for a report of the disposition of all exceptions *requested.* The statute is simply not designed to afford a meaningful exception request review process. Thus, the statutory scheme suggests that the Secretary is not required to personally review all requests for an exception under § 986(d), he only must review exceptions that are granted.

Furthermore, adoption of Nickelson's argument would require the court to hold that the statute silently thrusts upon the Secretary of Defense personally an incredible administrative burden. At the time that 10 U.S.C. § 986 was proposed in the Senate, Defense had a backlog of over 600,000 investigations for renewals of security clearances. 146 Cong. Rec. S4652 (June 7, 2000) (statement of Senator Smith). Congress' concern was that too

---

7. *See supra* note 3.

8. The second sentence of § 986(d) states that "[t]he authority under the preceding sentence may not be delegated." 10 U.S.C. § 986(d) (2000).

9. Annual Report.—Not later than February 1 each year, the Secretary of Defense shall submit to the Committees on Armed Services of the Senate and House of Representatives a report identifying each waiver issued under subsection (d) during the preceding year with an explanation for each case of the disqualifying factor in subsection (c) that applied, and the reason for the waiver of disqualification. 10 U.S.C. § 986(e).

many convicted felons were being granted security clearances, not that some convicted felons who perhaps should be granted security clearances would not be. *Id.* at S4651. It would therefore be unreasonable to imply that Congress intended for either the Secretary of Defense or the secretary of a military department to personally review every investigation in which a prior conviction appeared on the applicant's record before the security clearance could be revoked. It further belies reason to assume that Congress would impose this responsibility silently.

Therefore, because the process established by O.I. 64 does not exceed authority conferred by 10 U.S.C. § 986, Nickelson's complaint fails to state a claim on this basis.

For the reasons set forth above, the court **DISMISSES** this action. The Clerk is **DIRECTED** to send a copy of this opinion to all counsel of record.

**IT IS SO ORDERED.**